# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| A. KELLEY'S GARAGE, INC., d/b/a KELLEY'S TRUCK CENTER,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>VILLAGE OF STONE PARK, an  )<br>Illinois municipal corporation and  )<br>body politic, BENIAMINO MAZZULLA,  )<br>both individually and as President of the  )<br>Village of Stone Park Board of Trustees,  )<br>and GIUSEPPE CAPECE, both  )<br>individually and as Police Chief of the  )<br>Village of Stone Park,  )<br>)<br>Defendants.  ) | No. 03 C 2758 |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Beniamino Mazzulla's ("Mazzulla"), Defendant Giuseppe Capece's ("Capece"), and Defendant the Village of Stone Park's ("Village") joint motion for summary judgment. For the reasons stated below, we deny Defendants' motion for summary judgment on the claims brought against Mazzulla and Capece and we grant Defendants' motion for summary judgment on the claim brought against the Village.

1

## BACKGROUND

Plaintiff Kelley's Garage, Inc. ("Kelley's") provides towing services, vehicle body work, and mechanical repair services to private and municipal customers. Sometime around 1983, Kelley's began providing towing services for the Village in connection with law enforcement activities. There was not a formal contract between Kelley's and the Village. Rather there was an informal rotation practice followed by the Village under which the Village would provide towing opportunities, alternating between Kelley's and another towing company named S&S Towing.

Dennis Schwartz ("Schwartz") has been the General Manager of Kelley's since 1992. In 2001, Mazzulla ran for Village President and asked Schwartz for a campaign contribution and Schwartz refused to give a contribution and refused to support Mazzulla. It is undisputed that Mazzulla told Schwartz that if Mazzulla won the election, "Schwartz would regret not supporting him." (SF 29). Kelley's "openly supported" the incumbent Village President in 2001, by displaying political campaign signs on Kelley's trucks. Mazzulla won the election and on April 16, 2001, he took office as Village President. Following the April 2001 election, Area Towing, a third towing company was added to the rotation list for Stone Park and according to Kelley's, soon thereafter, its calls for its towing services began to decline. It is undisputed that after the election, Mazzulla told Schwartz that "he'd

regret Mazzulla's victory." (SF 33). It is undisputed that after Mazzulla was elected, Kelley's towing work for the Village decreased. It is undisputed that in the summer of 2002 Diane Hemming-Schwartz ("Hemming"), the President and owner of Kelley's, met with Mazzulla and Mazzulla told her that he had warned Schwartz that Schwartz would regret not supporting Mazzulla. It is also undisputed that Mazzulla then informed Hemming that Kelley's would no longer be called for towing for the Village's prostitution sting operations. It is not disputed that Hemming met with Capece, the Village's Chief of Police, to discuss the loss of the towing opportunities for the prostitution sting operations, Capece told Hemming that she needed to talk to Mazzulla.

In 2003, Kelley's was removed from the Village towing list. Defendants claim that it was Capece's decision alone and that it was based on citizen complaints about the prices charged by Kelley's, missing items from towed vehicles, and the fact that Kelley's did not perform its services in a speedy fashion. Kelley's brought the instant action alleging violations of its First Amendment right to free speech, political association, and political expression in violation of 42 U.S.C.§ 1983 ("Section 1983").

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

# DISCUSSION

## I. Claims Against Mazzulla and Capece

Mazzulla and Capece move for summary judgment on the claims brought against them. A municipal entity "may not condition public employment on an employee's exercise of his or her First Amendment rights." *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717 (1996). This rule applies to the hiring of independent contractors by a municipal entity to perform municipal services. *Id.* at 721-723. In order to prevail on a First Amendment retaliation claim, "an employee must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination." *Board of County Com'rs., Wabaunsee County, Kan. v. Umbehr,* 518 U.S. 668, 675 (1996); *Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977). If the employee meets that burden, the municipal entity must then show that "it would have taken the same action even in the absence of the protected conduct." *Umbehr*, 518 U.S. at 675.

Defendants argue that the decision to add Area Towing to the towing list and the decision to remove Kelley's from the towing list was made by Capece for legitimate business reasons. Defendants argue that there is no evidence that Capece knew of the protected conduct of Kelley's or considered it in making his decision. However, Defendants are only able to argue that such issues are undisputed by

5

ignoring the evidence that is not favorable to them. We need look little farther than Defendants' Local Rule 56.1 statement of facts in which Defendants themselves state that Mazzulla made threats to Schwartz while he was the General Manager of Kelley's. It is undisputed that Mazzulla asked Schwartz to contribute to his campaign and Schwartz refused. (SF 28). It is undisputed that Mazzulla told Schwartz before the election that he would regret the fact that he did not support Mazzulla's campaign. (SF 29). It is undisputed that Schwartz openly supported Mazzulla's opponent in the 2001 election. ( SF 31). It is undisputed that after the election, at a party, Mazzulla told Schwartz that he would regret not supporting him in the election. (SF 33). Defendants also acknowledge that Mazzulla met with Hemming, the owner of Kelley's, in the summer of 2002. (SF 36). It is undisputed that at that meeting, Mazzulla reminded her of the warning he gave Schwartz and that he told her that Kelley's would no longer be given the towing jobs for the prostitution sting operations "because that was the way he wanted it." (SF 36). In addition, Defendants admit that it was Mazzulla, rather than Capece, who informed her that Kelley's was losing the towing jobs for the prostitution sting operations. (SF 33). Also, Defendants acknowledge that when Hemming later went to talk to Capece about regaining the prostitution sting operations jobs, Capece told her that she would have to speak with Mazzulla. (SF 34). Capece also admitted at his deposition that he was appointed by Mazzulla, that he was a social friend of Mazzulla, and that he had known Mazzulla for the past 13 years. ( Capece dep. 16-

18).

Defendants argue that the time span between Mazzulla's election and the towing decisions that adversely affected Kelley's shows that there is no causal connection between Mazzulla's threats and the decisions. In *Wallscetti v. Fox*, the Seventh Circuit recognized that a delay between protected speech and adverse employment action is evidence against a causal connection between the protected speech and the adverse action. 258 F.3d 662, 669 (7th Cir. 2001)(finding that plaintiff had supplied insufficient evidence to infer any hidden animus towards the plaintiff and that the time span between the protected speech and the firing of the plaintiff supported the conclusion that there was no animus). However, in *Wallscetti v. Fox*, the court qualified its holding by stating that four months "*without more*, is too long to support a reasonable inference of causation." *Id.* (emphasis added). In the instant action, Kelley's has supplied suffient evidence of animus towards Kelley's and there is "more" than simply a long span of time between the protected speech and the adverse action. Defendants ask the court to only consider that over twenty months passed after the election of Mazzulla before Kelley's was removed from the towing list. We agree that if that were the only evidence, there would not be a sufficient showing of a causal connection between the protected speech and the adverse action. However, in the instant action, Kelley's points to direct threats made by Mazzulla on three occassions and the final threat in 2002 was accompanied by Mazzulla informing Hemming that Kelley's was going to lose the

prostitution sting operation towing business. Defendants do not dispute the fact that the threats occurred. Defendants cannot simply be given immunity because a certain time period passed after the election. The First Amendment does not allow a municipal entity to terminate the services of a towing company because of its political affiliation and a contention that the termination occurred twenty months after the protected speech does not in and of iteself give a license to a party to violate the First Amendment.

It is one thing to point to the fact that Kelley's supported Mazzulla's opponent during the 2001 election and then point to the fact that thereafter Kelley's was taken off the towing list. It would be unreasonable to infer retaliation based solely upon such circumstances. However, it is quite another situation before us where there are is evidence of threats of retaliation by Mazzulla before and after the election and first hand witnessed threats made directly by Mazzulla himself rather than evidence such as rumors or second hand information. We are not finding that such evidence is sufficient for Kelley's to prvail on the mertis at trial. However, such evidence is sufficient to defeat a motion for summary judgment by Defendants.

Defendants also argue that they are entitled to summary judgment because it is undisputed that there were many citizen complaints about Kelley's services and Kelley's did not perform its services in a timely fashion. However, Kelley's disputes whether or not its services were performed in a timely fashion and Kelley's disputes whether there were citizen complaints about its services or that, even if there were

such complaints, whether such complaints were unique compared to the other towing companies on the list. For example, Kelley's claims that Defendants have failed to produce a single witness who personally complained about Kelley's services or one piece of documentation of such citizen complaints. Capece admitted during his deposition that he did not make any specific written notations about such complaints that identified information such as the name of the complaining party, the date, or the time. (Capece dep. 57-58). Capece also admitted at his deposition that he did not know if he received one complaint or a hundred complaints about Kelley's services and Capece admitted that he could not state how many complaints he received about Kelley's in 2002 or 2003, or whether any of the alleged complaints were justified or were completely false. (Capece dep. 57-58). Defendants also admit, pursuant to Local Rule 56.1, that the Village never contacted Schwartz, Hemming, or Kelley's about slow response times or about any citizen complaints. ( R SAF 18-23). Kelley's also points to evidence that shows that there were complaints against the other towing companies on the Village's towing list. Thus, one disputed issue is whether or not Kelley's services were indeed of such poor quality as Capece contends and such an issue cannot be addressed at the summary judgment stage. This issue is relevant because Capece claims that this was the basis for his decision to take Kelley's off the towing list.

In the above analysis, we are not making any findings in favor of Kelley's or making any judgment as to whether or not they will prevail at trial. At the summary

judgment stage we cannot act as the trier of fact and judge the case on the merits. We merely find that there is sufficient genuinely disputed facts to proceed onward to trial. Therefore, we deny Defendants' motion for summary judgment on the claims against Mazzulla and Capece.

II. Claim Against Village

The Village also moves for summary judgment on the claim brought against it. The doctrine of *respondeat superior* cannot be utilized to hold local governmental units liable for Section 1983 violations. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A municipal governmental unit cannot be held liable under Section 1983 "unless the deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Board of Comm'rs. Of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir. 1999). A local governmental unit's unconstitutional policy, practice, or custom can be shown by: "(1) an express policy that causes a constitutional deprivation when enforced; 2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). Kelley's has not pointed to sufficient evidence that a Village policy, custom, or practice resulted in a deprivation of its constitutional rights or that this issue is genuninely disputed. As a result,

judgment stage we cannot act as the trier of fact and judge the case on the merits. We merely find that there is sufficient genuinely disputed facts to proceed onward to trial. Therefore, we deny Defendants' motion for summary judgment on the claims against Mazzulla and Capece.

II. Claim Against Village

The Village also moves for summary judgment on the claim brought against it. The doctrine of *respondeat superior* cannot be utilized to hold local governmental units liable for Section 1983 violations. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A municipal governmental unit cannot be held liable under Section 1983 "unless the deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Board of Comm'rs. Of Bartholomew County, Indiana*, 183 F.3d 734, 737 (7th Cir. 1999). A local governmental unit's unconstitutional policy, practice, or custom can be shown by: "(1) an express policy that causes a constitutional deprivation when enforced; 2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). Kelley's has not pointed to sufficient evidence that a Village policy, custom, or practice resulted in a deprivation of its constitutional rights or that this issue is genuninely disputed. As a result,

the Village's policies, practices or customs are not in any way implicated. Therefore, we grant the Village's motion for summary judgment on the claim brought against the Village.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion for summary judgment on the claims brought against Mazzulla and Capece and we grant Defendants' motion for summary judgment on the claim brought against the Village.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 19, 2005